## LAMAR INSURANCE CO. ET AL.
## v.
## WILLIAM A. PENNELL ET AL.

1.  LAWYER'S FEE.—What is a reasonable fee in a given case is a question of fact, to be determined, like others, by the weight of the evidence. The court is of opinion that $6,000 was a reasonable fee in this case.

2.  ESTOPPEL BY JUDGMENT.—Property which was insured was destroyed by fire communicated by a spark from an engine. The insurance companies paid in full except the appellant company, which, having failed, paid only a dividend of fifty-two per cent. An action was brought by the insured against the railroad company, notice of which was given to all the companies except the appellant. A verdict was returned for the insured for the value of the property as found on the trial. The railroad company filed an interpleader. All the parties were brought in and an interlocutory decree was made in accordance with the prayer of the bill. The final decree was satisfactory to all except the appellant company, and the question at issue is whether in this suit the adjudication as to the value of the property in the railroad case is conclusive between the appellant company and the insured. *Held*, that the judgment is not conclusive between them.

3.  ESTOPPEL MUST BE MUTUAL.—It is essential to an estoppel that it be mutual between the parties to the proceeding in which it is claimed.

4.  NOTICE.—The court is of opinion that the notice to the president of the suspended company was not due notice to the company or the receiver.

APPEAL from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding. Opinion filed February 25, 1886.

Messrs. WILLIAMS & CAPEN, for appellant; that where a suit is brought and prosecuted for the benefit of another the latter has the right to avail himself of the judgment, that the judgment fixes the right of all the parties, cited Conger v. Chilcote, 42 Ia. 18 (24); Stoddard v. Thompson, 31 Id. 80; McNamee v. Moreland, 26 Id. 97; Finn v. W. R. R. Co., 112 Mass. 524; I. C. R. R. Co. v. Cobb, 64. Ill. 132; Green v. Clark, 12 N. Y. 343; Calkins v. Allerton, 3 Barb. 171; Bigelow on Estoppel, 77-8, 61, 63, 47; Tate v. Hunter, 3 Strob. Eq. 136; Kent v. H. R. R. Co., 22 Barb. 278; 1 Greenl. Ev., § 535; White v. Bascom, 28 Vt. 268; Smith's Leading Cases, II, 435; Kitchen v. Campbell, 3 Wils. 304; Crow v. Bowlby,

Lamar Ins. Co. v. Pennell.

68 Ill. 23; Miller v. L. M. T. Co., U. S. C. C. Mo., Chi. Leg. News, Oct. 1, 1881, p. 18.

Mr. W. E. HUGHES, for appellant; cited Pentz v. Receivers, 9 Paige, 568.

PLEASANTS, J. In February, 1872, the Normal Hotel and contents, the property of William A. Pennell, were destroyed by fire. He had insurance thereon in five different companies amounting in the aggregate to $14,500, including $2,500 in the Lamar. All of these paid promptly and in full, except the latter, which, having suspended shortly after and in consequence of the great Chicago fire of Oct. 1871, paid only a dividend of fifty-two per cent. with interest to the 23d of June, 1875, being about $1,380.

Pennell then brought an action against the C. & A. R. R. Co. for the burning of said property, alleging that the fire was communicated from a locomotive engine of the defendant through its negligence, and in 1877 recovered judgment therein for $15,000, which was reversed by the Supreme Court at the January term, 1880. See 94 Ill. 448.

Being unable from any resources of his own then in hand to further prosecute the suit, he made an arrangement with Wm. E. Hughes, his attorney, by which the latter undertook to proceed, with the risk of reimbursement for his expenses and reasonable compensation for his services out of the judgment, if any should be finally obtained.

Appellant Chandler had been appointed receiver of the Lamar Ins. Co. in November, 1872. Leonard Swett had been its president, but took no part in the conduct of its affairs thereafter.

In 1881 Pennell, through his attorney, gave notice to the other companies, and to Mr. Swett for the Lamar, that he had brought the suit mentioned; that the judgment had been reversed; that a large amount of costs had been taxed against him; that he had incurred considerable expense, and that he desired their assistance in its further prosecution.

The Hartford and Ætna companies alone, in compliance

with this request, did contribute money and employ counsel for that purpose. Chandler testified that he received no such notice, and had no knowledge of the pendency of the suit. Mr. Hughes, who prepared the notices and directed their service, testified that he did not know a receiver had been appointed for the Lamar; but it was shown that Pennell did, for he had prosecuted his claim on its policy against Mr. Chandler as such.

The second trial, which took place in 1882, resulted in a verdict and judgment for the plaintiff for $18,000, which was successively affirmed by the Appellate and Supreme Courts, and a rehearing denied by the latter in July, 1884.

Upon the rendition of this judgment in the circuit court Pennell assigned it to Hughes and Haynie in trust for the purposes therein stated, of which it is unnecessary to say more than that it provided, in pursuance of a preceding agreement to that effect, for the reimbursement to the two companies that had aided in the prosecution the amount they had paid him on their policies, being $5,000.

The railroad company, upon the denial of its petition for rehearing, filed the bill herein, setting forth that it had been notified by different parties that they claimed the money due on said judgment or some portion thereof, respectively, and it did not know to whom to make payment, and praying that it be allowed to pay it into court and be discharged from further liability thereon, and that said parties therein named defendants be required to interplead. These parties being all brought in, an interlocutory decree was made in accordance with the prayer of the bill, the money was paid into court, and the railroad company discharged.

The claims of the North British and Mercantile Insurance Company and the Insurance Company of North America, which companies had paid in full, were waived by disclaimers filed, and all of those urged were disposed of by final decree, upon the pleadings and proofs, to the satisfaction of the holders respectively, except that of the Lamar company for reimbursement of the amount paid by its receiver, set up by cross-bill, which was dismissed.

Appellant, as we understand, concedes the priority of all the other claims, but insists, in respect to two of them, that the amount was too large, whereby the fund was exhausted before its own was reached.

That fund was composed of the amount of insurance paid, $13,088, and of the judgment recovered against the railroad company, $18,000, which were together confessedly more than the full value of the property insured and destroyed. The railroad company being primarily liable for that value, the excess, remaining after deducting the reasonable cost of its recovery, ought to be returned to the insurance companies that paid it, in proportion to the amounts they paid, respectively, unless some equities as between them, or other legally sufficient reason, called for a different distribution.

The disclaimer of the two companies that disclaimed was a sufficient legal reason for ignoring them entirely. Appellant conceded the propriety of giving priority over its own to those of the two that assisted in the prosecution of the suit against the railroad company, and therefore we express no opinion upon that point.

It also concedes that the miscellaneous claims for fees, costs and disbursements in the suit, aggregating $1,836.41, were properly allowed. According to its view, then, Pennell should be charged with $31,088, and credited with said items—$1,836.41, the amount to the Hartford and Ætna as agreed on—$5,000, and the full value of the property destroyed, which it insists was conclusively fixed by the judgment at $18,000—$24,836.41, leaving a balance of $6,251.59, which it claims was sufficient to pay Mr. Hughes for his services and reimburse appellant. But the court directed the payment to the Hartford and Ætna companies, for interest on their claim at the rate of six per cent. per annum from the date of the judgment until the money was paid into court, of the further sum of $725, and to Pennell, for his property destroyed, in addition to the amount of the judgment and upon evidence *dehors* the judgment, which was received against objection by appellant, the further sum of $3,000=3,725, thus reducing said balance to $2,526.59, and allowed to Mr. Hughes, as a reasonable com-

pensation for his services throughout the litigation, the sum of $3,000, which said reduced balance was insufficient to pay; so that nothing was left to apply on the claim of appellant.

Complaint is here made of so much of said decree as allows to Pennell for his property more than was found by the verdict and judgment against the railroad company, and to Mr. Hughes so large a sum for his services.

What is a reasonable fee in a given case is a question of fact, to be determined, like others, by the weight of the evidence; and though the amount here allowed of itself seems large, its reasonableness was abundantly attested. The suit was for a large claim. It was costly to prosecute—in money, time and labor—and the plaintiff was insolvent. It involved, directly, two trials in the circuit court and three on appeal, and indirectly another suit, tried in the circuit and in the appellate courts. It was defended to the utmost, by very able and distinguished counsel. It lasted nine years. The testimony of each of fifteen lawyers, representing, as is said, every office in the city of Bloomington excepting that of the opposing counsel, substantially supports the finding. The average of their judgments, arrived at in different ways, is fairly represented by it, and the extremes are but little apart, while only one witness, being one of the opposing counsel, was called on the other side. The subject being in its nature matter of opinion, whatever might be our own, independently of that of others given under oath and cross-examination, it would be unreasonable, arbitrary and against well-settled precedent, to reverse the decree for this finding upon the evidence.

And so as to the value of the property, unless the verdict and judgment in the other suit are conclusive as between appellant and Pennell, the finding of the court below appears to be fully justified. On behalf of Pennell seven witnesses testified as to the buildings, of whom five also testified as to the furniture. Their average judgment of the value of the buildings at the time of the fire was over $19,000, with a difference of $2,510 between extremes, and of the furniture, $5,500, with a difference of $1,500 between extremes. On the other side were three. One was the builder, who stated no more than

that the contract price for the material and work in the main buildings was $15,000. The others rented it in 1870 and 1871, paying from $75 to $100 per month, being twenty per cent. of the gross earnings, and in their opinion the furniture was worth, when new, between four and five thousand dollars, and six months after they left (about the time of the fire), three thousand.

The testimony is, so far as it touches the point at all, that the buildings were in excellent order and worth more when burned than when built.

It is thus shown that in fixing the value of the property at $21,000 the court was within the limits indicated by a large preponderance of the evidence.

The question then is, whether the verdict and judgment in the case against the railroad company was conclusive on that subject, as between appellant and Pennell.

It seems to be a novel one. No case directly and clearly in point has been found, unless it be that of Pentz et al. v. The Receiver of the Ætna Fire Ins. Co., 9 Paige, 568, which appellant denies. There the plaintiffs' stores and merchandise, which they claimed to be of the value of $60,864.50, and on which they had insurance of $22,000, were blown up with gunpowder by order of the city authorities, to arrest the great fire in New York, of Dec. 16, 1835. In a proceeding against the city for the value of this property, under the statute, the jury assessed the amount at $39,476.50. Plaintiffs then filed this petition against the receiver of the insurance company for a dividend on its policies issued to them, and the vice-chancellor held the verdict against the city to be conclusive as between these parties. His reasoning was that petitioners there claimed the full amount of their loss, and it was the duty of the jury to give it to them; that the court must presume it performed that duty, especially since no measures were taken to have the verdict set aside; that if the insurance company should now pay them anything on its policies it would have a remedy over, by subrogation, against the city, and hence "if the verdict is not conclusive and the petitioners are still at liberty to claim beyond or in addition to it upon the policies of

insurance, this consequence is to follow: that the corporation of the city of New York, after once paying all the damages that a jury have found against them and which was intended to cover the whole loss, may be liable to pay an additional amount in an action against them in behalf of the insurers." 3 Edw. Chy. Pl. 341.

With deference we apprehend that the party injured, after receiving full compensation from the city, would have no right or remedy against it to which the insurers could be subrogated, and the consequence stated could not follow. If they had not paid their policies they could interpose this payment by the city as a bar to the claim of the insured against them, or have it applied *pro tanto* thereon. If th y had, then their remedy to recover it would be not against the city but the insured, as trustee for them of so much money received from the city. Connecticut F. Ins. Co. v. The Erie R'way Co., 73 N. Y. 399; Monmouth County M. and F. Ins. Co. v. Hutchinson et al., 21 N. J. Eq. 107; Hurt et al. v. Western R. R. Corp'n, 13 Metc. 99; Hall and Long v. The R. R. Companies, 13 Wall. (U. S.) 367; May on Insurance, § 454.

The judgment of the vice-chancellor was reversed for another reason given, viz.: that since the city was liable under the statute for only so much of the property destroyed by its order as would not have been inevitably destroyed by the fire, it was not necessarily the duty of the jury, nor was it certainly their intention, to assess it for the whole loss. But the lan_ guage of the chancellor seems to go still further: "And if the jury, without any fault on the part of the assured, should refuse to give the whole amount of the loss, either because they thought some part of the property would undoubtedly have been destroyed by the fire if the buildings had not been b'own up, or for any other cause, there is no principle which can make that decision conclusive as to the actual extent of the loss, as between the insurer and the assured."

For the reason, however, that the measure of damages and consequently the necessary evidence was not the same against the city and the insurance company, we are not dis-

posed to regard the judgment in that case as authority in this. Here the question, both as to the railroad company in the suit against it and as to the insurance company in the case at bar, is the same, being the actual amount of Pennell's loss by the fire. In the former it was clearly the duty of the jury, if they found the defendant guilty, to render a verdict for the full amount of that loss; they were so instructed and it must be presumed they intended to do it. All the evidence on that subject offered by either side was admitted.

The verdict and judgment therefore conclusively limit the amount in favor of the railroad company as against Pennell, and consequently as against the world, since he was the sole party directly injured. The property destroyed was his alone, so that whoever else should seek a further recovery therefor against that company must do so claiming under him, and being thus in privity would be estopped by the judgment to which he was party.

But nobody ought to be bound by any settlement of a question affecting their interests, in which, without their fault, they were neither actually nor presumptively represented.

Here the insurance company was also liable for the loss in question, to the extent of its insurance, until compensation was fully made. Its liability, however, was only secondary to that of the railroad company, and by an obligation that was distinct, independent and of a different nature. There was no privity between them in respect to that of either. The insurance company is not here claiming any estate or interest under the railroad company which in its hands was bound by the judgment. The railroad company had no authority otherwise so to bind it. If it had in good faith confessed a judgment for $26,000, or had made default and the damages been assessed upon a writ of inquiry at that amount, as some of the testimony made them, it would hardly be pretended that the insurance company would be thereby precluded from showing, in a suit against it upon its policy, that the value of the property was far less. The interest of these parties in the determination of this question by the former suit was not the same, that of the one calling for a small judgment and

that of the other, since the defendant was able to pay it, a large one. The one, then, could not fairly represent that of the other.

And so we see nothing in their relations in consequence of which the insurance company should be bound because the railroad company is. Nor anything in those of the former with Pennell which should make it conclusive as between them. There was no privity of estate, for the insurance company had no estate or ownership whatever in the property destroyed, (Peoria M. & F. Ins. Co. v. Frost, 37 Ill. 333,) and hence none in the particular money received as compensation for its destruction. Nor in contract. Its relations to him, changing with the events, were these : At first, simply his insurer against loss by fire ; upon the occurrence of such loss, his debtor to the amount of such insurance ; upon its payment of that debt or any part of it, and his receipt, by such insurance and compensation, of anything more than full indemnity for his loss and expenses, his creditor or *cestui que trust* of the amount so paid or its ratable proportion of it, or, if he had not brought suit for such compensation, his indemnitor with right of subrogation to his remedy for it. 73 N. Y. 399, and cases in connection cited, *supra.* But none of these relations, of themselves, involved privity. Freeman on Judgments, §§ 162, 173, 180, 181. Nor were their interests in respect to the judgment necessarily the same. That depended on the accident of the defendant's ability to pay it in full. They might have been different, as the extent of this ability would affect the probability and extent of reimbursement to the insurers. And lastly, the fact that the suit was for their common benefit was immaterial unless notice and opportunity were given to the insurance company to take part in it. Cole v. Favorite, 69 Ill. 457; Freeman, § 181. Such notice and opportunity might have aided this fact or some of the relations mentioned, as indemnitor, to make the judgment conclusive against it.

The question remains, were these given? And here the parties seem to have changed places. Appellees, assuming they were, present the refusal or neglect of appellants to act upon them as a sufficient reason in equity for postponing

Lamar Ins. Co. v. Pennell.

their entire claim to those of the two companies that were reimbursed in full (of which, because of the acquiescence in such postponement, we have not felt called upon to express any opinion).   On the other hand the answer and cross-bill of appellants aver that Pennell studiously concealed from them the institution and pendency of the suit and the existence of any claim against the railroad company ; and Mr. Chandler testified that he had no recollection of any notice or information of these facts until after the judgment was finally obtained.   There is no evidence of any intentional concealment, but there is also no reason to doubt the statements of Mr. Chandler.   He resided in Chicago, while the suit was in McLean county.   As a lawyer he may have read and thinks he did at some time read, as he read other reported decisions of the Supreme Court, the opinion in 94 Ill., but "without connecting it with this case," and has no recollection as to the time.   The volume was probably not out until 1881, six years after the company had paid Pennell the dividend on his policy and the suit had been commenced, and no notice was attempted to be given to any of the companies until 1881.

We are of opinion that the notice then served on Mr. Swett was not due notice to the company or the receiver, and it is conceded that the company never directed, advised or consented to the institution of the suit, or had any part in its prosecution.   The judgment then can not on this ground, as on no other, be held conclusive against it.

And if not against it, then also not against Pennell; for it is essential to an estoppel that it be mutual between the parties to the proceeding in which it is claimed.   Bigelow on Estoppel, 3rd Ed., p. 59.   Freeman on Judgments, § 159.   The evidence objected to was therefore properly received, and the decree will be affirmed.

Decree affirmed.