MOSES CASLER ET AL.

v.

ASAHEL B. BYERS.

*Mortgages — Foreclosure—Correction of Erroneous Description—Re-acknowledgment—Homestead—Dower—Failure to Release—Estoppel—Solicitor's Fees—How Ascertained.*

1. Upon a bill to foreclose a mortgage, it appearing that, owing to the omission of the word "one," the description read, "township forty — (41)," to correct which supposed error the word "one" was inserted with the consent of the mortgagor and wife, after which the deed was re-acknowl·edged, no reference to a release of homestead or dower being made in the notary's certificate, it is *held:* That the mortgagors were entitled to no homestead as against the mortgagee; that the amendment added nothing to the force of the mortgage; that the omission was simply an ambiguity which might have been explained by oral testimony; and that the correction related back to the original making of the mortgage, no new acknowledgment or record being necessary.

2. In the case presented, the appellant having persuaded appellee to make advances upon certain statements of fact, of a large amount of money for his benefit, he is estopped to deny the truth of such statements.

3. What is a reasonable solicitor's fee in a given case is a question of fact to be determined by the weight of the evidence. In the case presented an allowance of $500 is sustained by a majority of the court. Smith, J., dissents, on the ground that the allowance is exorbitant, and the mode by which it was ascertained, illegal.

[Opinion filed December 8, 1888.]

IN ERROR to the Circuit Court of Winnebago County; the Hon. O. H. HORTON, Judge, presiding.

Mr. HARVEY A. JONES, for plaintiffs in error.

Mr. WILLIAM LATHROP, for defendant in error.

C. B. SMITH, J. This was a bill filed by Asahel B. Byers, appellee, against Moses Casler and his wife, Catherine M. Casler, appellants, to foreclose a mortgage. The material facts appearing in this record are these:

On the 8th day of April, 1876, Moses Casler executed his note to Richard L. Devine for $3,350, and on the same day Casler and his wife, to secure the note, executed their mortgage to Devine, conveying thereby the S. E. ¼ of the S. E. ¼ of section No. 8, and the N. ½ of the S. W. ¼, section No. 9, all in township 41 north, range 3, east of the 3d principal meridian, containing 120 acres.

This mortgage and its acknowledgment contained a proper release of dower and homestead, and contained a power of sale. The note was due in five years and drew ten per cent. interest, payable annually. In December, 1879, Devine discovered what he supposed was an error in the description of the township in the mortgage. The printed portion of the mortgage gave the township thus, " forty——;" but the figures in writing immediately following the word "forty" and the blank were thus, "(41);" so that the whole description as to the township was thus : " township forty—— (41)." The land was in fact in township forty-one. On discovering this supposed error, Devine took a notary and called on Casler and his wife, and obtained their consent to correct the error by writing the word " one" in the blank after " forty," and then had the mortgage re-acknowledged; but the notary, in writing out his certificate, omitted all reference to any release of homestead or dower, and the mortgage was again recorded.

After the note and mortgage became due Devine advertised it for sale, in default of payment under the power conferred in the mortgage, and in his advertisement recited the amount due November 1, 1881, at $5,042.86. Casler became alarmed lest he should lose his farm and appealed to Byers to help him. The farms of these two men adjoined. Byers was a man of considerable means, with a large farm, and a neighbor of Casler. Casler told him they were going to sell him out. Byers told him he would see what he could do for him. Byers did not have the money but went to one R. D. Rowen to see if he could borrow it. He succeeded in borrowing $4,000 of Rowen with the promise of getting $500 more in the spring. Casler had agreed to reduce the amount of the mortgage to $4,500, if Byers would help him. Casler bor-

rowed the other $500 from Updike. At the time appellee applied to Rowen for the loan he asked Rowen to take the loan himself, but Rowen was then about starting to California and said he had no time to attend to it, but would take the loan himself in the spring when he returned, if the security was satisfactory; and Byers then expected to be relieved of the loan to Casler in the spring. When the parties met at Devine's to pay him his money and transfer the note and mortgage to appellee it was found that Casler could not reduce the amount of the mortgage to $4,500, and that he lacked $84.80 of having enough. Appellee loaned him this amount also, with an agreement that it should be paid back in thirty days, but it has never been paid.

Aside from this mortgage made to Devine by Casler,. it appears that there were other dealings between these two men which had been running for years, and that Casler had executed chattel mortgages to Devine at different times to secure debts, and it also appeared that Devine had taken judgments against Casler, and that there were unsettled dealings between them up to the day of the transfer of the note and mortgage to appellee. The mortgage became due April 8, 1881. On March 10, 1881, the evidence shows that Casler and Devine then had a settlement of their affairs and reduced the result to writing and signed it. By this settlement Casler owed Devine, including the amount of the mortgage, $4,855.

Again, on November 23, 1881, when Devine, Casler and Byers were all together at Devine's bank, · the account was all gone over between Casler and Devine in the presence of appellee, and the precise amount due on the note and mortgage again agreed on and reduced to writing and signed by Casler, wherein it is stated that the precise amount due on said note and mortgage is $4,500, neither "more nor less," and this agreement was given to appellee as the true amount due on the mortgage which he was buying for the sole benefit of his friend and neighbor Casler, and to save his farm from being sold; and to further accommodate him he extended the time of payment of the mortgage for five years and reduced the rate of interest from ten to seven per cent. After this settlement,

Casler v. Byers.

then, appellee paid Devine the $4,500 and took an assignment of the note and mortgage.   After this arrangement was completed, Casler requested appellee to keep the note and mort-gage himself and not let Rowen have it.   He again complied with this request.

When the note and mortgage became due it was not paid and this bill is filed for the foreclosure of that mortgage.

The defendants, Casler and his wife, answer the bill and deny that they requested appellee to buy the note and mortgage and deny that they agreed that any particular sum was due, and allege that, at the time appellee bought the note, there was an unsettled account between Casler and Devine and that appellee knew it at the time of his purchase, and deny there is now due on said mortgage $4,500, or any interest thereon to appellee, and allege that while the note was in Devine's hands Casler had paid $2,500 on the note and that appellee knew it.   There is no claim of homestead set up in the answer. The case was referred to the master who took the evidence and reported it back to the court.   The case was heard on bill, answer, replication and proofs taken, and a decree rendered for complainant in conformity with the prayer of the bill for the amount due on the note and mortgage and $500 solicitor's fee.   Appellants have brought the record here for review.

Appellants first assign for error that the court erred in not decreeing that they were entitled to a homestead as against such mortgage.   This claim is based on the assumption that the mortgage as it was first executed did not cover the land in township 41, and that after it was amended by inserting the word "one" after "forty" there was no new acknowledgment waiving homestead.   There is nothing in this objection.   The mortgage covered the land in dispute as it was first executed and needed no correction.   The amendment added nothing to the force of the mortgage except possibly to save calling a witness, some time, to show which land the Caslers owned. The mortgage in fact covered land in both townships, and where a deed or mortgage may admit of two constructions the grantee is at liberty to select the one most favorable to him-self.   Sharp v. Thompson, 100 Ill. 447.

At least it was but an ambiguity, which might be explained by oral testimony on the trial, and the mortgage located on the right land. But if there was any defect of description Casler and his wife corrected it at once upon their attention being called to it. This correction would relate back to the original making of the mortgage and needed no new acknowledgment or recording.

Appellants next urge that they were not estopped to show what the real amount due on said note and mortgage was, even in the hands of appellee. They claim the right to go back and show payment of all or a large part of this mortgage to Devine while he held it. That they can not be permitted to do this now, under the facts in this record, is too plain for argument. The proof is clear and uncontradicted that Byers bought this mortgage at the request of the defendant Casler to save his farm for him; that he himself had to borrow all the money to do it; that he made not one cent in the transaction and did not desire to do so; that it was a pure act of grace and friendship. He knew nothing at all about the dealings between Devine and Casler except that Casler told him that Devine had advertised his farm for sale, and stated the amount in his notice at over $5,000. That was the amount Casler wanted. Appellee told him he could not raise so much but that if he could reduce it to $4,500 he would see what he could do for him. Before appellant paid his money and took an assignment, he had Devine and Casler make a settlement of their affairs and had them decide for themselves the exact amount due on this mortgage and to put that question forever at rest, he required them to put it in writing and Casler signed it. In addition to this guaranty of the correction of the statement here shown is another statement in writing made inside of a year before, also signed by Casler, showing there was then due on said mortgage $4,855. To permit him now to come in and deny his solemn admissions and declarations made to Byers and to induce Byers to act upon them and to rely upon their truth and to advance a large amount of money for appellant's benefit, would be to perpetrate a gross fraud and allow appellant to take advantage of his own wrong. The

doctrine of estoppel is that where a person by his words or conduct voluntarily causes another to believe in the existence of a certain state of things and induces him to rest on that so as to change his previous condition he will be estopped to aver, against the latter, a different state of things. The People ex rel. v. Brown, 67 Ill. 435. Under the uncontradicted facts in this case the doctrine of estoppel applies to the fullest extent, and in the view we take of the case it is wholly immaterial what the state of accounts may be as between Devine and Casler.

The majority of the court are of the opinion that there is no ground for reversal on account of an excessive attorney's fee. The appellee had loaned his money to take up a mortgage at the request of Casler, as an accommodation, and the mortgage contained a provision for the payment of a reasonable attorney's fee in case it had to be foreclosed. It was necessary to foreclose it, and the appellee, on account of the factious opposition of Casler, the maker of the mortgage, was compelled to pay out a large amount for attorneys. The amount of their fee was ascertained by resort to the evidence of two attorneys, who testified that a reasonable amount for solicitor's fees in the case was $500, and the appellee cross-examined the witnesses, but failed to introduce any rebutting evidence. Under such evidence, we are of the opinion that we can not absolutely say the fee was not reasonable. As was well said in Lamar Ins. Co. v. Parnell, 19 Ill. App. 212, "what is a reasonable attorney's fee, in a given case. is a question of fact to be determined, like others, by the weight of evidence. * * * The subject being in its nature matter of opinion, whatever might be our own, independently of that of others given under oath and cross-examination, it would be unreasonable, arbitrary, and against well settled precedent to reverse the decree of this finding upon the evidence." We fully concur in this view. In the case of Reynolds et al. v. McMillan, 63 Ill. 46, in which the court condemned the manner of allowing witnesses to express an opinion as to what was a reasonable attorney's fee, it must be remembered that this was under a special statute, and in that case minors were interested, and

every objection that can be made is held in their favor.   The
court say : " Infants are the peculiar care of chancery, and
courts should not hesitate to protect them against exorbitant
fees."

In the case at bar the appellants are of full age, and if they
were not satisfied with the testimony as given by the wit-
nesses as to the basis on which they formed their opinion as
to $500 being a reasonable attorney's fee, they could, and it
was their duty to, cross-examine and fully ascertain upon what
such opinion was based.   No objection was made to the evi-
dence at the time and no witnesses introduced to contradict it.

We all concur in affirming the decree in all things except as
to the allowance of $500 as solicitor's fees, and upon that
question the writer of this opinion dissents from a majority
of the court, and, hereafter speaking for himself only, is of
opinion the decree ought to be reversed upon that point, and
remanded, with directions to allow a reasonable attorney's fee
in conformity with the language of the mortgage.   I hold
that the allowance of $500 is extortionate and oppressive, and
that there is nothing appearing in this record to justify any
such fee.   In my opinion it amounts to judicial robbery.   The
excuse urged by counsel for appellee for this part of the
decree is that the defendant made a bitter and long fight.
This he had a legal right to do, and for this luxury he is justly
compelled to pay all the costs of both parties.

The legal questions involved in the case were of the simplest
character.   The bill was filed February 28, 1887, in De Kalb
County, and in April, 1887, on motion of defendant, the venue
was changed to Winnebago and a trial had at the October term,
and a decree rendered October 26, 1887.   Less than eight
months intervened from the beginning to the end of this suit;
a much shorter time than is usually occupied in disposing of
a controverted chancery suit.   From five to ten days would
have been ample time to take all the evidence before the
master and the record shows that only eight days, in fact, were
consumed.

No great legal skill or learning was needed at any stage of
the case.   But I hold that the court proceeded erroneously in

Casler v. Byers.

the ascertainment of the amount it would allow, and the mode adopted here has been expressly prohibited by the Supreme Court in the case of Reynolds v. McMillan, 63 Ill. 46. That was a case in partition under the statute. Section 40 of that statute provides that in amicable proceedings for the partition of estates, the court may allow a reasonable solicitor's fee to be charged as costs among the parties in interest. In that case it was proper to allow the fee, and in order to determine what a reasonable solicitor's fee was, the court allowed witnesses to testify and give their opinions as to what was a reasonable fee, and they gave it as their opinion that $1,000 was a reasonable fee for such services.

The Supreme Court very properly held, first, that the method of their finding what a reasonable fee was, was erroneous, and held that the proper question was "what is the usual and customary fees for such services;" and second, that $1,000 was an exorbitant and excessive fee; and for the allowance of that fee the cause was reversed. In the case before us the mortgage provided for a reasonable solicitor's fee in case of foreclosure, using precisely the same language as the statute. The court, in both cases, must ascertain what is a reasonable fee, and I know of no reason why the mode adopted in the one case for ascertaining that fact, should be different from the mode adopted in the other.

In the case at bar appellee called two witnesses only, to prove the fees. The following question was asked both of them: "What, in your judgment, would be a reasonable attorney's fee to be allowed in this case to the complainant for the foreclosure of this mortgage, judging from the amount involved and what you saw of the papers, and depositions taken in the case? The amount claimed by complainant is something over $5,000. The papers will show that about eight days time has been spent in taking depositions in this case and that the venue was changed from De Kalb to this county."

The first witness answered that he had practiced law nine years and that $400 or $500 would be a reasonable fee.

The second witness answered that he was a lawyer since 1865, and that $500 would be a reasonable fee. The court

selected the highest figure.    These questions and answers
come precisely within the method adopted in Reynolds v. Mc-
Millan, *supra*, and which were then held erroneous.    The same
rule was followed by this court in Dorsey v. Corn, 2 Ill. App.
533.    In this latter case the court go farther than the Supreme
Court and say that the chancellor should not be governed alone
by the opinions of attorneys, but should exercise his own
judgment and sense of justice in the allowance of fees.    I
differ from the majority of the court with reluctance, but I
am so firmly convinced that that part of the decree allowing
$500 for solicitor's fee is illegal in its mode of ascertainment
and directly contrary to the rule of this and the Supreme
Court, and also that it is excessive and exorbitant in amount,
and so abhorrent to my sense of justice, that I must, with great
deference to my brethren, enter my protest against it.    The
decree is affirmed by a majority of the court.

*Decree affirmed.*